**United States District Court for the District of Maryland
(Greenbelt Division)**

| | |
|---|---|
| **NHN PROPERTIES, LLC** | |
| Plaintiff, | Case No.: 8:22-cv-00065-PWG |
| **AVANCE TITLE, LLC, ET AL.** | |
| Defendants. | |

## <u>First Amended Complaint</u>

Plaintiff, NHN Properties, LLC ("NHN"), by its attorney, William M. Rudow, Esquire, and the Law Office of Hunter C. Piel, LLC, sues Defendants, Avance Title LLC ("ATLLC") and Soledad Herrera ("Herrera") and as reasons states as follows:

### <u>JURISDICTION</u>

1. Federal jurisdiction is based on diversity of citizenship pursuant to 28 USC § 1332, with the amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

2. NHN is an "Active" Ohio limited liability company, with its principal place of business in Ohio; all three NHN members reside in Ohio; thus Plaintiff is an Ohio citizen for the purposes of determining the existence of diversity of citizenship under 28 U.S.C. § 1332.

3.  Upon information and belief, the individual Defendant, Herrera, is domiciled in Virginia; thus Defendant Herrera is a citizen of Virginia for the purposes of determining the existence of diversity of citizenship under 28 U.S.C. § 1332.

4.  Upon information and belief, ATLLC has its principal place of business in Virginia; upon information and belief ATLLC has a sole member who is a citizen of Virginia; thus Defendant ATLLC is a citizen of Virginia for the purposes of determining the existence of diversity of citizenship under 28 U.S.C. § 1332.

5.  The Plaintiff is a citizen of Ohio and both Defendants are citizens of Virginia, so complete cross party diversity of citizenship exists in this case, with the Plaintiff claiming over $75,000.00, exclusive of interest and costs, the District Court has jurisdiction over this case.

## **VENUE**

6.  Maryland is the proper venue pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7.  The events or omissions giving rise to the claim include the Defendants' closing a real estate loan involving a Maryland borrower and Maryland collateral/real estate, including notarizations by Defendant Herrera, in her capacity as a Prince George's County, Maryland, Notary, on Plaintiff loan documents (including without limitation that Deed of Trust ("DOT"), dated January 10, 2021, between Monster Investments, Inc. and the Plaintiff

securing a $2,500,000.00 Promissory Note (also notarized by Defendant Herrera, in her capacity as a Prince George's County, Maryland, Notary).

8. A substantial part of property that is the subject of the action is situated in Maryland because the real estate intended to secure the Plaintiff's loan is located in Maryland.

## FACTUAL ALLEGATIONS

### THE TRANSACTION

9. NHN is an Ohio asset based mortgage lender.

10. NHN does not routinely do business in Maryland; the loan described in this complaint is the only Maryland transaction entered into by NHN.

11. As an asset based mortgage lender, NNH places a very heavy emphasis on the value of real estate collateralizing its loans.

12. NHN's underwriting policies and procedures, inter alia, had a Loan-to-Value Ratio requirement ("LTV Requirement") as to the value of the properties in order to approve the loan in issue in this lawsuit.

13. Monster Investments, Inc. ("Borrower") approached NHN via a loan broker and requested a $2,500,000.00 real estate secured loan ("Loan").

14. The Borrower owned a series of properties (collectively, "Properties" and individually "Property") identified as follows:

> Lot Numbered Eight (8) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 8 Shelton Court, Indian Head, Charles, MD  20640

Lot Numbered Fourteen (14) in the subdivision known and called "SHELTON SQUARE, a Re-subdivision of Lot 2 of Revised Plat, Land of Ralph T Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, at Folio 101.

Said property known as 14 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Sixteen (16) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 16 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Eighteen (18) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 18 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Nineteen (19) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 19 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Twenty-Seven (27) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in

Plat Book DGB 43, folio 101.

Said property known as 27 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Twenty-Eight (28) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 28 Shelton Court, Indian Head, Charles, MD 20640

Lot Numbered Thirty (30) in the subdivision known and called "Shelton Square, a Resubdivision of Lot 2 of Revised Plat, Land of Ralph T. Shelton and wife (37/64)", as shown and described on the Plat thereof duly recorded among the Land Records of Charles County, Maryland in Plat Book DGB 43, folio 101.

Said property known as 30 Shelton Court, Indian Head, Charles, MD 20640

Lot number Two (2), containing 2.5579 acres, more or less, 'PENNY SUBDIVISION", as per plat thereof duty recorded among the Land Records of Charles County, Maryland, in Plat Book No. 21, Folio 46, together with all the equipment, fixtures and appliances located on said land and premises titled in the said C.B. Barger James R Latham and William D Zantzinger, or any one of them.

Said property known as 2400 Old Washington Road, Waldorf, MD  20601

Beginning for the same at a pipe fixed in the round on the southwest side of Old Washington Road, said pipe marking the most northerly corner of the land owned by Q. Berry, Investments, Inc. (deed recorded in Liber 345, Folio 99) and marking the most westerly corner of the parcel now described; running thence with said Old
Washington Road n 45 deg 19 min 40 sec E - 140.46 feet to a pipe; thence leaving said road and running with the land owned by Adolf L Hintze (deed recorded in Liber 468, Folio 250) S 40 deg 40 min 56 sec E - 175.45 feet to a pipe; thence leaving said Adolf L Hintze land and running S 49 deg 19 min 04 sec W - 168.48 feet to a pipe fixed in the line of the said land N 31 deg 00 min 00 sec W - 168.06 feet to the point of beginning, containing

.603 of an acre, more or less.

Said property known as 2380 Old Washington Road, Waldorf, MD  20601

All of Lot No. 1, consisting of 1,741 acres, as shown on plat by D.H. Steffens Co., Land Surveyor, entitled "Land of Erich J Hintze, Sr, 6th Election District, Charles County, Maryland" duly recorded among the Plat Records of Charles County, Maryland in Plat Book 26, Folio 139. Granting also to the Grantee, its successor and assigns the concurrent use, with the Grantor, their heirs and assigns, for the benefit of the land herein conveyed, and for the purpose of ingress and egress, to and from the said land, from and to Old Washington Road, of that 50 foot wide right of way shown on said plat leading from Old Washington Road to the northwest boundary line of Lot No. 1.

Said property known as 12095 Hintze Place, Charles, MD  20601.

15. The Borrower agreed to pledge a first priority security interest the Properties to assure payment if it defaulted on the Loan.

16. NHN obtained a series of appraisals of the Properties, valuing them in total at $4,440,000; this allowed NHN to confirm that the Borrower met NHN's LTV for the proposed $2,500,000.00 real estate secured Loan.

17. NHN's purpose of obtaining a security interest in the Properties as collateral for the Loan is to ensure that the Loan is properly secured in case of a default.

18. ATLLC is a title/escrow company that, according to its website:

> *Throughout Virginia, Maryland and Washington D.C., we provide:*
> *Comprehensive title searches and property examinations (residential and commercial)*
> *Full title searches covering judgement tax lien and chain of title history*
> *Quick and accurate turn-around time on Closing Protection Letters and Commitments*
> *In-person and Remote Online Closings*
> *Rapid e-recording and indexing through Simplifile and CSC e-Recording.*

19. Title/escrow companies like ATLLC protect lenders like NHN by following closing instructions to insure that loans like the Loan are properly documented and funds are properly disbursed via *In-person and Remote Online Closings*.

20. Herrera was at all times relevant to the subject matter of this Complaint a seasoned title/escrow agent of ATLLC.

THE CONTRACT

21. Plaintiff entered into a title/escrow agent contract ("Contract") with ATLLC to perform an *in-person or Remote Online Closing* of the Loan from the Plaintiffs to Monster Investments, Inc., on January 11, 2021, as documented in that Promissory Note dated January 11, 2021, in the original principal amount of $2,500,000.00 intended to be secured by a first lien on all of the Properties pursuant to the DOT.

22. The Contract was between NHH and ATLLC.

23. The Contract is generally described as NHN hiring ATLLC to perform the *in-person or Remote Online* Loan *Closing* including all customary title company services.

24. A key Contract term specifically required ATLLC to provide the Plaintiff with a first priority lien in each Property or not to fund [close] the Loan and return to the Plaintiff its $2,500.000.00 Loan proceeds if ATLLC could not do so.

25. The Contract was documented, inter alia, by a series of e-mails between ATLLC and counsel for NHN; one in particular from Brian Dattilo, Esq. ("1st E-

Mail"), dated Saturday, January 9, 2021 11:01 AM to, inter alia, ATLLC

escrow agent Herrera ("Closing Instructions"), identified several key Contract

terms by stating:

> *Attached please find the final loan agreement, promissory note and deed of trust for NHN's loan to Monster Investments, Ms. Robinson and Mr. Bernard.*
>
> ***… In order to fund:***
>
> > *1.* ***Avance Title must confirm that NHN will be the first lien holder on the properties that are the subject of this loan****; and*
> >
> > *2. The loan documents above must be fully and properly executed and the deed of trust recorded with the proper county recording office; and …* [Emphasis Added]

see Plaintiff Exhibit 1 attached hereto and incorporated herein by this

reference; the Contract was also documented by 2 wires totaling $2,500,000

on behalf of NHN to Avance, and a wire from Avance to NHN's agent in the

amount of $500,000 [for interest payment].

26. The meeting of minds between NHN and ATLLC was confirmed by that email

from Herrera, Sunday, January 10, 2021 5:31 PM, on behalf of ATLLC, to

Plaintiff's counsel replying to the 1st E-Mail confirming the Closing Instructions,

also part of Plaintiff Exhibit 1 stating:

> *Attached are loan documents signed and executed.* ***All properties will be under NHN as 1st lien position noteholder****, once recording has been done I will forward deed of trust with recording information.* [Emphasis Added]

27. The Defendant title company also had the following responsibilities under the

Contract because as a commercial real estate transaction, the Loan required

the title company to perform the following specific *closing* services including,
inter alia the following necessary to create *NHN's first lien position in each
Property* securing the Loan:

a. the execution of the Loan documents, including without limitation, DOT
   and Promissory Note;

b. the recording of certain Loan documents with the specific documents
   and recording location(s) to be determined by Avance, including without
   limitation, deed of trust releases regarding all Properties, DOT,
   Refinance Affidavit, and State of Maryland Land Instrument Intake
   Sheet;

c. acquiring the abstract or title search;

d. performing the title examination;

e. verifying the identities and authority of the Borrower;

f. handling all aspects of the documents involved with the Loan closing;

g. collecting and escrowing Loan proceeds from the Lender;

h. performing escrow services regarding both Loan proceeds and Loan
   related documents; and

i. distributing all Loan funds in accordance with the Closing Instructions
   by issuing all disbursements from the escrow account controlled by it,
   specifically including paying off all liens on the Properties that would
   prime the Plaintiff's first position lien created by the Loan documents,
   including DOT, necessary to create NHN's first lien position in each

Property securing the Loan or alternatively returning the funds to NHN, if unable to create NHN's first lien position in each Property securing the Loan.

28. For performing the escrow Contract services, NHN entitled ATLLC to collect its fees from the Borrower who was legally responsible for all costs and expenses regarding the Loan.

29. The first lien was to be created by, inter alia, having the DOT executed and duly recorded in the proper land records office, and disbursing the Plaintiff's funds as Loan proceeds to pay off and/or clear all liens on all of the Properties so that when the Deed of Trust was recorded it would create a first lien on all of the Properties in favor of the Plaintiff securing the Loan.

<u>BREACH OF CONTRACT / NEGLIGENT ACTS</u>

30. Defendants closed the Loan and distributed the Plaintiff's Loan proceeds, including wiring $500,000.00 back to NHN [to cover interest on the Loan], as instructed, but failed to secure a first lien on the Properties in favor of the Plaintiff to secure the Loan - constituting a default under the Contract.

31. ATLLC funded the Loan closing including, without limitation, receiving and disbursing the Plaintiff's $2,500,000.00, coordinating the execution and distribution of the Plaintiff's Loan documents, and in some instances, recording said Loan document(s); these Loan funds held in escrow should, inter alia, have been used to pay itself and pay off or clear previous lien

holders with liens on the Properties that would have prevented the Plaintiff's new liens from being in first position.

32. Upon information and belief, ATLLC did not disburse Loan proceeds to prior lien holders on the Properties - constituting a default under the Contract.

33. Upon information and belief, ATLLC did not obtain releases from any prior lien holders on the Properties to be filed to remove the prior liens & leave NHN with a first priority lien in each Property - constituting a default under the Contract.

34. ATLLC did not file releases from prior lien holders on the Properties to remove the prior liens & leave NHN with a first priority lien in all Properties - constituting a default under the Contract.

35. ATLLC did not provide NHN with a first priority lien in any of the Properties securing the Loan - constituting a default under the Contract.

36. ATLLC funded the Loan without providing NHN with a first priority lien in any of the Properties securing the Loan - constituting a default under the Contract.

37. ATLLC did not return the Loan proceeds when it was unable to provide NHN with a first priority lien in any of the Properties securing the Loan - constituting a default under the Contract - constituting a default under the Contract.

38. Defendant, Herrera, was the title agent who personally handled the Loan closing, including, inter alia, notarizing Loan documents.

D<span style="font-variant:small-caps">AMAGES</span>

39. The Properties are presently valued at $3,230,000.00 as follows:

     a.  8 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     b.  14 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     c.  16 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     d.  18 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     e.  19 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     f.  27 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     g.  28 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     h.  30 Shelton Court, Indian Head, Charles, MD  20640 $185,000.00;

     i.  2400 Old Washington Road, Waldorf, MD  20601 $1,400,000.00; and

     j.  2380 Old Washington Road, Waldorf, MD  20601 $350,000.00.

40. The Properties are encumbered by liens of $4,024,000.00 that prime the Plaintiff's lien as follows:

     a.  8 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     b.  14 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     c.  16 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     d.  18 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     e.  19 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     f.  27 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     g.  28 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     h.  30 Shelton Court, Indian Head, Charles, MD  20640 $200,000.00;

     i.  2400 Old Washington Road, Waldorf, MD  20601 $1,924,000.00; &

     j.  2380 Old Washington Road, Waldorf, MD  20601 $500,000.00.

41. The value of the Plaintiff's lien in the Properties is $0.00.

## Count 1 – Breach of Contract – ATLLC

42. The Plaintiff incorporates the allegations in paragraphs 1 – 41 herein.

43. Defendant ATLLC entered into the Contract with the Plaintiff to provide *closing* services that should have, inter alia, created a first lien on each of the Properties.

44. The Contract is between two parties – NHN & ATLLC.

45. The Contract is mutual with Avance agreeing providing NHN with Loan closing services and NHN agreeing to allow Avance to close the Loan.

46. Contract terms were stated with reasonable certainty as identified in First Amended Complaint paragraphs 23 – 29.

47. NHN and ATLLC have the legal capacity to enter into the Contract.

48. NHN provided a legal and enforceable right and method for the Borrower to pay Avance for its services constituting valid consideration.

49. ATLLC breached the Contract as identified in First Amended Complaint paragraphs 30 - 37.

50. Failure to provide a first lien on each Property harmed the Plaintiff in that the collateral for the Loan was reduced by the value of the Property to the extent that a lien primed/es the Plaintiff's lien in each Property - $3,230,000.00.

51.   Alternatively, failure to provide a first lien on each Property harmed the Plaintiff in that the LTV was breached, and NHN would not have made the Loan had it known that it its lien on the Property would have no value; this is

reflected by the closing instruction to ATLLC by NHN prohibiting Loan funding until **confirming that NHN will be the first lien holder on the properties that are the subject of this loan**, causing the Plaintiff harm in the amount of $2,500,000.00, plus lost profits.

52. Failure to provide a first lien on each Property further harmed the Plaintiff in that when the Loan was in default, the Plaintiff could not realize on the Loan collateral – Property - in the amount(s) expected as a Property first lien holder.

53. The Borrower materially breached the Loan documents owing the Plaintiff $15,074,998.79 effective February 11, 2022.

54. NHN suffered $3,230,000.00 in general damages because it could not foreclose on any of the Properties due to lack of equity by the priming liens; these damages were proximately caused by the breach and were reasonably foreseeable by both parties.

WHEREFORE, the Plaintiff seeks judgment in favor of the Plaintiff against the Defendant ATLLC in the amount of $3,230,000.00, interest, fees, costs, and all other sums due under the Loan documents, court costs and such other and further relief as justice in this case may require.

## Count 2 –Implied In Fact Contract– ATLLC

55. The Plaintiff incorporates the allegations in paragraphs 1 – 54 herein.

56. Defendant ATLLC entered into the Contract with the Plaintiff to provide *closing* services that should have, inter alia, created a first lien on each of the Properties.

57. The Contract is between two parties – NHN & ATLLC.

58. The Contract is mutual with Avance agreeing to provide NHN with Loan closing services and NHN agreeing to allow Avance to close the Loan.

59. Contract terms were stated with reasonable certainty as identified in First Amended Complaint paragraphs 23 – 29.

60. The Contract, alleged as an implied contract in this Count 2, is the same legal relationship between NHN and Avance as alleged as a contract in Count 1, only the mode of proof is different.

61. NHN and ATLLC have the legal capacity to enter into the Contract.

62. ATLLC breached the Contract as identified in First Amended Complaint paragraphs 30 - 37.

63. Failure to provide a first lien on each Property harmed the Plaintiff in that the collateral for the Loan was reduced by the value of the Property to the extent that a lien primed/es the Plaintiff's lien in each Property - $3,230,000.00.

64. Alternatively, failure to provide a first lien on each Property harmed the Plaintiff in that the LTV was breached and NHN would not have made the Loan had it known that it its lien on the Property would have no value; this is reflected by the closing instruction to ATLLC by NHN prohibiting Loan funding until **confirming that NHN will be the first lien holder on the properties**

***that are the subject of this loan***, causing the Plaintiff harm in the amount of $2,500,000.00, plus lost profits.

65. Failure to provide a first lien on each Property further harmed the Plaintiff in that when the Loan was in default, the Plaintiff could not realize on the Loan collateral – Property - in the amount(s) expected as a Property first lien holder.

66. The Borrower materially breached the Loan documents owing the Plaintiff $15,074,998.79 effective February 11, 2022.

67. NHN suffered $3,230,000.00 in damages because it could not foreclose on any of the Properties due to lack of equity by the priming liens.

68. This implied contract may be inferred from the actions of the contracting parties, in other words, the parties had a contract that can be seen in their conduct rather than in any explicit set of words, and the ordinary course of dealing and the common understanding of men.

69. NHN wired $2,500,000.00 and loan documents to Avance with instructions to close the Loan unless a first lien was provided to NHN.

70. Avance held itself out as a title company, accepted the NHN wire, and NHN Loan documents, oversaw execution of the NHN Loan documents, even having a Avance employee Herrera notarize the NHN DOT, disbursed the NHN Loan funds, wiring $500,000.00 back to NHN's agent, as instructed, albeit in direct violation of the closing instructions, but in the scope and course of conducting the Loan closing services.

71. NHN provided a legal and enforceable right and method for the Borrower to pay Avance for its services.

72. The mutual agreement or consent of the parties was for Avance to close and fund NHN's Loan after providing NHN with a first lien on the Properties; this is seen by the conduct of each party as noted above.

73. There was a meeting of minds of NHN & Avance; this is seen by the conduct of each party as noted above.

WHEREFORE, the Plaintiff seeks judgment in favor of the Plaintiff against the Defendant ATLLC in the amount of $3,230,000.00, interest, fees, costs, and all other sums due under the Loan documents, court costs and such other and further relief as justice in this case may require.

## Count 3 – Tort – Negligence – ATLLC & Soledad Herrera

74. The Plaintiff incorporates the allegations in paragraphs 1 – 73 herein.

75. The Defendants owe the Plaintiff a duty in performing the Loan closing because, inter alia, the Defendants in their capacities as third party escrow agents uninterested in the transaction and acting as a fiduciary for the grantor and grantee handled the Plaintiff's $2,500,000.00 Loan proceeds, placing these funds in its escrow account, and Loan documents, holding them in escrow as well for the lender, to be disbursed, and executed, respectively, as instructed by the lender as well as having entered into the Contract.

76. The Loan documents and funds were escrow as property delivered by NHN - a promisor - to a third party – Avance - to be held by the third party for a given

amount of time or until the occurrence of a condition – NHN obtaining a first lien position on all of the Properties - at which time the third party is to hand over the ... property – Loan proceeds - to the promisee - Borrower.

77. The Defendants negligently breached their duties as escrow/title agents, owed to the Plaintiff as a secured lender, to act with the skill and care of a reasonable escrow/title agent conducting a real estate settlement by failing to close the Loan in such a manner as to provide the Plaintiff with a first lien on all of the Properties, or alternatively, unable to do so, returning to the Plaintiff the Plaintiff's Loan proceeds, as held in escrow, & ceasing to close the Loan; the Defendants failed to return to the Plaintiff the Plaintiff's Loan proceeds, as held in escrow, & cease closing the Loan upon learning that it could not provide a first lien position for the Plaintiff.

78. Defendant Herrera, by personally handling the Loan documents and proceeds in the scope and course of her employment by Avance as a settlement/escrow agent in closing the Loan, is personally liable for her negligent acts.

79. The economic loss doctrine does not apply to this Count 3, inter alia, because of privity, as NHN has an intimate nexus with ATLLC & Herrera because ATLLC & Herrera (who personally handled the funds and documents) knew that NHN was a mortgage lender, relying on ATLLC & Herrera to create for NHN a first lien position in the Properties to secure the Loan, and because NHN and ATLLC entered into the Contract, as performed and/or orchestrated

in material part by Herrera [See Plaintiff Exhibit 1 wherein Herrera personally communicated with counsel for the Plaintiff]; this established ATLLC & Herrera owing NHN a duty of care; NHN was also a reasonably foreseeable plaintiff in the event that ATLLC & Herrera failed to exercise reasonable care in carrying out their closing / escrow services; as does the nature of the Defendants' business.

80. Defendants' negligence proximately caused the Plaintiff to suffer economic damages in the amount of the value of the Properties; all such injuries were caused solely by the negligence of the Defendants without any negligence to the Plaintiff.

81. As a direct, natural, and proximate result of the Defendants' negligent actions identified in the First Amended Complaint paragraphs 30 – 37, or which, in the ordinary course of events, would likely result from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the Contract or performed the closing services as a probable or natural result of a breach Plaintiff has suffered economic damages in the value of the Properties which Avance & Herrera should have foreseen when they closed the Loan.

WHEREFORE, the Plaintiff seeks judgment in favor of the Plaintiff against Defendants ATLLC and Soledad Herrera, jointly and severally, in the amount of $3,230,000.00, interest, fees, costs, and all other sums due under the Loan

documents, court costs and such other and further relief as justice in this case may require.

## <u>Count 4 –Fiduciary Duty – ATLLC & Soledad Herrera - Damages Tort Based</u>

82. The Plaintiff incorporates the allegations in paragraphs 1 – 81 herein.

83. Maryland recognizes breach of fiduciary duty as an independent cause of action.

84. The deposit by NHN of a deed [deed of trust] or other written instrument with third party ATLLC to be held for delivery to the grantee or obligee on the performance of a condition or the happening of a certain event is termed an escrow closing. .

85. ATLLC & Herrera, the third parties aka escrow agents, are uninterested in the transaction and act as fiduciaries to both the grantor and the grantee.

86. The Defendants owe the Plaintiff a fiduciary duty in performing the Loan closing because, inter alia, the Defendants in their capacities as escrow agents handled the Plaintiff's $2,500,000.00 Loan proceeds, placing these funds in its escrow account, and Loan documents, holding them in escrow as well for the lender, to be disbursed and executed, respectively, as instructed by the lender.

87. The Loan documents and funds were escrow property delivered by NHN - a promisor - to third parties – ATLLC & Herrera - to be held by the third parties for a given amount of time or until the occurrence of a condition – NHN obtaining a first lien position on all of the Properties - at which time the third party is to hand over the ... property – Loan proceeds – to, inter alia, the

promisee – Borrower or, if said condition precedent was not met, return all Loan proceeds to the Plaintiff.

88. The Defendants negligently breached their fiduciary duties owed to the Plaintiff, as a secured lender, to act with the skill and care of reasonable escrow agents by failing to close the Loan in such a manner as to provide the Plaintiff with a first lien on all of the Properties or alternatively, if unable to do so, returning to the Plaintiff the Plaintiff's Loan proceeds, as held in escrow, & ceasing to close the Loan.

89. Defendant Herrera, by personally handling the escrowed Loan documents and Loan proceeds in the scope and course of her employment by ATLLC in her fiduciary capacity as a settlement/escrow agent closing the Loan, is personally liable for her negligence.

90. The economic loss doctrine does not apply to this Count 4, inter alia, because of privity, as NHN has an intimate nexus with ATLLC & Herrera because ATLLC & Herrera (who personally handled the funds and documents) knew that NHN was a mortgage lender, relying on ATLLC & Herrera to hold the Loan documents and proceeds in escrow and to create for NHN a first lien position in the Properties to secure the Loan, and because NHN and ATLLC entered into the Contract, as performed and/or orchestrated in material part by Herrera [See Plaintiff Exhibit 1 wherein Herrera personally communicated with counsel for the Plaintiff]; this established ATLLC & Herrera owing NHN a fiduciary duty of care; NHN was also a reasonably foreseeable plaintiff in the

event that ATLLC & Herrera failed to exercise reasonable care in carrying out their closing / fiduciary escrow services; as does the nature of the Defendants' business.

91. As a direct and proximate cause of, the Plaintiff has suffered economic damages.

92. Defendants' negligence proximately caused the Plaintiff to suffer economic damages in the amount of the value of the Properties; all such injuries were caused solely by the negligence of the Defendants without any negligence to the Plaintiff.

93. As a direct, natural, and proximate result of the Defendants' negligent actions identified in the First Amended Complaint paragraphs 30 – 37, or which, in the ordinary course of events, would likely result from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract as a probable or natural result of a breach Plaintiff has suffered economic damages in the value of the Properties which ATLLC & Herrera should have foreseen when they closed the Loan.

WHEREFORE, the Plaintiff seeks judgment in favor of the Plaintiff against Defendants ATLLC and Soledad Herrera, jointly and severally, in the amount of $3,230,000.00, interest, fees, costs, and all other sums due under the Loan

documents, court costs and such other and further relief as justice in this case may require.

February 17, 2022

_____/S/ *William Rudow*_____
William M. Rudow, Esquire
Federal Bar #:  09937
Law Office of Hunter C. Piel, LLC
502 Washington Avenue, Suite 730
Towson, Maryland 21204
(410) 542-6000
(410) 542-9500 (Facsimile)
wrudow@piellawfirm.com
Attorney for Plaintiff, NHN Properties, LLC